[Cite as *State v. Gregg*, 2024-Ohio-5974.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                     Court of Appeals No.  L-24-1037

    Appellee                                  Trial Court No.  CR0202302617

v.

Michael Gregg                               **DECISION AND JUDGMENT**

    Appellant                                  Decided:  December 20, 2024

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant Michael Gregg appeals the judgment of the Lucas County Court of Common Pleas, convicting him, following his guilty plea, to one count of aggravated burglary, one count of felonious assault, and one count of domestic violence.  Gregg contends that the trial court erred when it failed to merge all three offenses for purposes of sentencing.  For the following reasons, the trial court's judgment is affirmed.

**I. Factual Background and Procedural History**

{¶ 2} On October 17, 2023, the Lucas County Grand Jury returned a three-count indictment against Gregg, charging him with one count of aggravated burglary in

violation of R.C. 2911.11(A)(1) and (B), a felony of the first degree, one count of felonious assault in violation of R.C. 2903.11(A)(1) and (D), a felony of the second degree, and one count of domestic violence in violation of R.C. 2919.25(A), (D)(1), and (D)(3), a felony of the fourth degree. The charges arose from Gregg's conduct on October 9, 2023, wherein he attacked his estranged wife, breaking several bones in her face.

{¶ 3} Gregg initially pleaded not guilty by reason of insanity to the offenses. The trial court referred him to the Court Diagnostic & Treatment Center for an evaluation of his competency to stand trial and for the potential insanity defense. After the evaluation concluded that he was competent to stand trial and that he was not insane at the time of the offense, Gregg pleaded guilty to the charges as indicted.

{¶ 4} At the plea hearing, the State indicated its belief that the counts of felonious assault and domestic violence would merge at sentencing. The trial court then engaged in a Crim.R. 11 colloquy with Gregg, accepted his plea, found him guilty, and continued the matter for the preparation of a pre-sentence investigation report.

{¶ 5} The pre-sentence investigation report presents several slightly different versions of the event. In the first, the victim reported to the police that she and Gregg had been separated and he needed clothes from the house, so she picked him up and took him there. When they arrived, he began hitting her with a closed fist. She escaped and ran to a neighbor's house for help.

{¶ 6} In the second, the victim reported in an interview at the hospital that Gregg called her and asked for a ride from Maumee. When she picked him up, he was

2.

intoxicated. He asked to get some of his clothes from the house, and she agreed. When they arrived, the victim asked Gregg to stay outside while she gathered his clothing. As she came back, Gregg was waiting inside the house and an argument ensued. The victim asked him to leave at which time he shoved her, slammed her head into the wall, and punched her in the head multiple times. When she fell to the ground, he tried, unsuccessfully, to strangle her. He then hit her head into the ground repeatedly. The victim managed to escape and call the police for help.

{¶ 7} In the third version, Gregg reported to police detectives that he was intoxicated when he was picked up by the victim. As they were driving back to the house, he became angry because he felt that the victim was being disrespectful to him. He stated that he slapped her and admitted to punching her two or three times while in the car. When they arrived, he chased her into the house and continued to push and shove her around.

{¶ 8} Finally, in the fourth version, Gregg told the author of the pre-sentence investigation report that he was at a friend's house discussing a job opportunity and began drinking to the point of being intoxicated. He then called the victim and asked for a ride. When she picked him up, he asked if they could stop at the house so that he could get some jeans, and she agreed. He continued,

> So we go inside and hang out. Things are good. At a certain point I feel this shadow looming over me. I have this feeling that something entered my house with malicious intent. I attack the figure with brute force. I never thought it was my wife. I remember hearing the door shut and realizing it was my wife running across the street to the neighbor's house. I hid in the basement and waited for the police to come which they did and

3.

then they arrested me. I felt like the person who came into my house was my dad who I had an abusive relationship with.

{¶ 9} At sentencing, the State elaborated on its position as to whether the sentences could run consecutively, not whether they would merge:

> It is the State's understanding, again, as just put on the record, that the victim was in the process of divorcing the Defendant at the time that this offense occurred. She had kicked him out of the house at this point in time and because of the Defendant, she – the Defendant's family living out of state she – the victim very graciously had her mother house the Defendant at the time.
> The Defendant had gone somewhere that day and was drunk and called the victim because he was not able to drive. The victim again, very graciously went and picked him up. He told her that he needed some clothes from the house so she took him to the house. So she parked the car, told him to stay in the car while she went and collected his belongings. She went in the car – or excuse me, she went inside the house and he followed her. As she was collecting her [sic] things, he was inside the house. When she came out to the foyer he attacked her.
> Your Honor, he did not have permission to be in the house at that point. There was an active divorce going on. She told him to stay in the car when she went inside of the house and he deliberately went inside of the house when he did not have permission to do so. And then attacked the victim. So because of that, I believe that those Counts run consecutive, Your Honor.

Defense counsel responded that there were different versions of the events, and in Gregg's version he was invited into the home. Counsel argued that it was all one set of events. He asked the trial court to consider that the sentences could run concurrently and requested a prison term in the range of four years.

{¶ 10} The trial court then addressed Gregg,

> That being said, indeed two versions of a story here and two versions from you. The story that you were having a psychotic break and thought your wife was some monster who presented a threat to you and that is why you beat her so viciously is not holding water with me and let me explain why. On the night of this incident as pointed out by the State of Ohio, you

4.

made the following statement to Detectives, you stated that you were at a house on River Road for work and you were picked up by your estranged wife, the victim, and as you were driving back to the home you felt that the victim became disrespectful and you lost it.

You stated that you slapped the victim and admitted to punching her two to three times while in the car and stated that when you arrived at the house you chased her in the house, continued to push and shove her and that she was able to leave out of the front door and you hid in the house until arrested by the police. You did admit to being intoxicated during that event.

Four months later and a significant prison sentence looming over your head your story changes to the following: You weren't able to drive home so you called your wife for a ride, asked if she could take you to the house to pick up some clothes. She agreed. You go inside, you drink wine together, everything is good. And then at a certain point you felt a shadow looming over you, having a feeling that someone or something had entered the house with malicious intent and attacked that figure with brute force never thinking it was your wife.

Well Mr. Gregg, I'm not buying it because you had knowingly hurt your wife before, that's clear from your criminal record and the record that we've made here today. She had left you, she had kicked you out of the house and was divorcing you. You were on probation for Domestic Violence in which she was the victim. She had an active Protection Order against you. So I think you knew exactly who you were hurting that day and it will get you exactly nowhere in this courtroom to feign psychosis and pretend otherwise.

{¶ 11} In announcing its sentence, the trial court found that the counts of felonious assault and domestic violence merged, and the State elected to proceed on the count of felonious assault. Notably, at no point throughout the proceedings did the parties discuss, or did Gregg request, that the counts of aggravated burglary and felonious assault should merge. The trial court then ordered Gregg to serve six years in prison on both the counts of aggravated burglary and felonious assault, and ordered them to be served consecutively to one another for a total indefinite sentence of 12 to 15 years in prison.

5.

## II. Assignment of Error

{¶ 12} Gregg timely appeals from his judgment of conviction, asserting one assignment of error for review:

> 1. The trial court abused its discretion by failing to merge all appropriate sentences on the basis of allied offenses of similar import.

## III. Analysis

{¶ 13} Whether offenses should be merged as allied offenses under R.C. 2941.25 is an issue that this court generally reviews de novo. *State v. Bailey*, 2022-Ohio-4407, ¶ 6, citing *State v. Williams*, 2012-Ohio-5699, ¶ 1. Because Gregg did not argue or preserve the issue of merger at trial, the review is limited to plain error. *Id.* at ¶ 7, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 28 ("the failure to raise the allied offense issue at the time of sentencing forfeits all but plain error.").

{¶ 14} "Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice." *Id.* at ¶ 8, citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. To prevail, Gregg "must establish that 'an error occurred, that the error was obvious, and that there is "a reasonable *probability* that the error resulted in prejudice," meaning that the error affected the outcome of the trial.'" (Emphasis added in *Rogers*.) *Id.*, quoting *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, quoting *Rogers* at ¶ 22. "The elements of the plain-error doctrine are conjunctive: all three must apply to justify an appellate court's intervention." *Id.* at ¶ 9, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

6.

**{¶ 15}** For the first element, there must be an error. Here, the alleged error is that the trial court failed to find that all three offenses should have merged at sentencing.

**{¶ 16}** "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, which prohibit multiple punishments for the same offense." *State v. Rogers*, 2022-Ohio-4126, ¶ 16 (6th Dist.). That section provides,

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

**{¶ 17}** The test for determining whether allied offenses should be merged is well-established:

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Bailey* at ¶ 10, quoting *State v. Earley*, 2015-Ohio-4615, ¶ 12, quoting *State v. Ruff*, 2015-Ohio-995, ¶ 31. "The defendant bears the burden of establishing his entitlement to the protection, provided by R.C. 2941.25, against multiple punishments for a single

7.

criminal act." *State v. Washington*, 2013-Ohio-4982, ¶ 18, quoting *State v. Mughni*, 33 Ohio St.3d 65, 67 (1987); *State v. Smith*, 2023-Ohio-866, ¶ 10 (6th Dist.).

{¶ 18} Gregg pleaded guilty to aggravated burglary in violation of R.C. 2911.11(A)(1), which provides,

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure . . . when another person other than an accomplice of the offender is present, with purpose to commit in the structure . . . any criminal offense, if any of the following apply:
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another.

He also pleaded guilty to felonious assault in violation of R.C. 2903.11(A)(1), which states, "No person shall knowingly . . . Cause serious physical harm to another or to another's unborn."

{¶ 19} In his appellate brief, Gregg argues that the descriptions of the event show that his only criminal intent was to injure the victim. He contends that when he entered the home with the criminal intent of assaulting the victim, and then assaulted the victim, his conduct constituted one bad act, with one animus, and with injury to one victim, and therefore the offenses of aggravated burglary and felonious assault should merge with each other and with the already merged offense of domestic violence.

{¶ 20} Upon review, the offenses do not merge because they were committed separately. "Offenses are committed separately within the meaning of R.C. 2941.25(B) if one offense is completed before the other offense occurs." *State v. Fisher*, 2023-Ohio-2088, ¶ 21 (6th Dist.), citing *State v. Turner*, 2011-Ohio-6714, ¶ 24 (2d Dist.).

8.

{¶ 21} Complicating the analysis is the fact that Gregg did not raise the issue of merger in the trial court, resulting in an underdeveloped record and uncertainty over which version of the event is the true version. "Under such circumstances, we must presume a set of facts that supports the decision of the trial court on the merger issue." *Id.* at ¶ 29, citing *State v. Cartlidge*, 2019-Ohio-1283, ¶ 33 (3d Dist.) ("[I]f the presumption of a given set of facts is necessary to determine if the offenses were allied offenses of similar import, we must presume the facts established at the change of plea hearing would have validated, rather than invalidated, the judgment of the trial court."); *State v. Brandon*, 45 Ohio St.3d 85, 87 (1989) ("[I]f the presumption of a given set of facts is necessary, we must presume the set of facts that validates, rather than invalidates, the judgment.").

{¶ 22} In this case, the trial court relied on Gregg's statement to police detectives that he punched the victim two or three times in the car before they arrived at the house. Under that version of the event, the felonious assault occurred in the car and was complete prior to Gregg's trespass into the home and commission of aggravated burglary. As such, the offenses were committed separately. Gregg, therefore, has failed to satisfy his burden to prove that he is entitled to the protection against double jeopardy. The trial court did not err when it failed to merge his convictions for aggravated burglary and felonious assault.

{¶ 23} Moreover, even if this court assumes that the trial court erred, the second element of the plain-error test requires the error to be obvious. This part of the test "gives teeth to our belief that the plain-error doctrine is warranted only under exceptional

9.

circumstances to prevent injustice." *Bailey*, 2022-Ohio-4407, at ¶ 15. Here, given the varying descriptions of the event, it cannot be said that a failure to merge the offenses is an *obvious* error.

{¶ 24} Accordingly, the trial court did not commit plain error when it failed to merge Gregg's convictions for aggravated burglary, felonious assault, and domestic violence. His assignment of error is not well-taken.

### IV. Conclusion

{¶ 25} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Gregg is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.